IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| C&C Metal Recycling, LLC,                          ) | |
| )                                                                 | C.A. No.  8:24-0799-HMH |
| Plaintiff,                           ) | |
| )                                                                 | |
| vs.                                  ) | **OPINION & ORDER** |
| )                                                                 | |
| First-Citizens Bank & Trust Company,       ) | |
| )                                                                 | |
| Defendant.                      ) | |

This matter is before the court on First Citizens Bank & Trust Company's ("First Citizens") motion to dismiss C&C Metal Recycling, LLC's ("C&C") complaint under Federal Rule of Civil Procedure 12(b)(6).  For the reasons below, the court denies First Citizens' motion.

### I. Background

The following facts are taken from C&C's complaint and are accepted as true for purposes of ruling on First Citizens' motion.  Ray v. Roane, 93 F.4th 651, 653 (4th Cir. 2024).  C&C is a South Carolina limited liability company that maintains a checking account with First Citizens.  (Compl. ¶ 5, ECF No. 1-1.)  In early 2023, two checks drawn on C&C's First Citizens account were deposited at "two third[-]party banks" by "two unknown persons."  (Id. ¶ 6, ECF No. 1-1.)  Both checks were dated January 26, 2023.  (Id. ¶ 7, ECF No. 1-1.)  One of the checks was worth $16,495.22 and posted to C&C's First Citizens account on February 1, 2023.  (Id. ¶ 8, ECF No. 1-1.)  The other check, worth $45,638.44, posted two days later on February 3.  (Id. ¶ 9, ECF No. 1-1.)  C&C claims that it did not issue either check and maintains that "the checks were forgeries/counterfeits."  (Compl. ¶ 10, ECF No. 1-1.)

On February 13, 2023, one of the depositary banks contacted C&C.  (Id. ¶ 12, ECF No. 1-1.)  C&C informed the bank that the check was "not valid" and reported the fraudulent

1

transaction to First Citizens the same day.  (Id. ¶¶ 12-13, ECF No. 1-1.)  C&C states that it "promptly" reported the other fraudulent check as well.  (Id. ¶ 13, ECF No. 1-1.)  According to C&C, a First Citizens "employee advised C&C that he would recommend that [First Citizens] return the funds to C&C."  (Id. ¶ 14, ECF No. 1-1.)  C&C also claims that First Citizens has reimbursed it for fraudulent checks in past.  (Compl. ¶ 15, ECF No. 1-1.)  To date, however, First Citizens has failed to reimburse C&C for either check.  (Id. ¶ 14, ECF No. 1-1.)

On January 18, 2024, C&C sued First Citizens in South Carolina state court, asserting claims under Article 4 of the Uniform Commercial Code ("UCC"), S.C. Code Ann. §§ 36-4-101 to -504, and the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-20.  (Id. ¶¶ 16-35, ECF No. 1-1.)  First Citizens removed the case to this court on February 15, 2024.  (Not. Removal, ECF No. 1.)  On April 17, 2024, First Citizens moved to dismiss C&C's complaint for failure to state a claim.  (Mot. Dismiss, ECF No. 16.)  C&C responded in opposition nearly a month later, on May 15, 2024.[1]  (Resp. Opp'n, ECF No. 20.)  After receiving an extension of time, First Citizens filed its reply on May 29, 2024.  (Reply, ECF No. 25.)  This matter is ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678

---

[1] Under the court's Local Rules, C&C's response was due on May 1, 2024.  Local Civ. Rule 7.06 (D.S.C.) (permitting fourteen days to respond to motions).  The parties appear to be operating under the assumption that the court granted C&C an extension of time to file its response.  No such extension was ever requested or granted.  Nevertheless, because First Citizens does not object to C&C's filing, the court will treat C&C's response as timely filed.

(2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "'[D]etailed factual allegations'" are not required, but the plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id. (quoting Twombly, 550 U.S. at 555).  In reviewing the complaint, the court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party."  Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018).

### III. DISCUSSION

#### A. C&C's UCC Claim

Article 4 of the UCC governs the relationship between banks and their customers.  S.C. Code Ann. §§ 36-4-101 to -504.  Section 36-4-401 provides that a bank may only charge items against a customer's account that are "properly payable."  Id. § 36-4-401(a).  "An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank."  Id.  An item is not properly payable if, for example, it "contain[s] a forged drawer's signature or forged indorsement."  Id., cmt. 1.  When a bank charges a customer's account for an item that is not properly payable, § 36-4-401 is the "source of the customer's substantive right to recover."  Am. Airlines Emps. Fed. Credit Union v. Martin, 29 S.W.3d 86, 95 (Tex. 2000) (construing identically worded provision in Texas's UCC).

Section 36-4-401, however, merely establishes a default rule.  Section 36-4-103 allows parties to vary the effect of Article 4's provisions by agreement as long as the parties do not

"disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure." S.C. Code Ann. § 36-4-103(a).

Here, First Citizens argues that C&C's UCC claim should be dismissed because the two checks were properly payable according to the terms of a "reverse positive pay" provision contained in the parties' "Master Treasury Management Services Agreement" ("TMS Agreement"). (Mem. Supp. Mot. Dismiss 7, ECF No. 16-2.) Reverse positive pay is a service offered by First Citizens to combat check fraud. When a customer is enrolled in the reverse positive pay service, First Citizens sends the customer a daily report "listing all the checks that posted to [its] account and were paid during the prior evening's processing." (Mot. Dismiss Ex. A (TMS Agreement 43), ECF No. 16-1.) The customer has until 3:30 pm to review the day's report and inform First Citizens whether any of the checks listed are unauthorized. The customer's failure to notify First Citizens of any unauthorized checks by 3:30 pm "constitutes [the customer's] representation and warranty that the check[s] [are] properly payable and chargeable against [its] [a]ccount." (Id. Ex. A (TMS Agreement 43), ECF No. 16-1.) According to First Citizens, C&C's UCC claim fails because C&C represented that the two checks at issue were properly payable in accordance with the TMS Agreement by waiting over a week to notify First Citizens about the alleged fraud.

The issue with First Citizens' argument is that the TMS Agreement is not referenced in, or attached to, C&C's complaint. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015) ("Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the documents attached or incorporated into the complaint." (internal quotation marks omitted)). While courts may consider a document attached to a defendant's motion to dismiss if the

4

document is "integral to the complaint" and its authenticity is not disputed, Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016), C&C explicitly challenges the court's consideration of the TMS Agreement, which is unsigned and lists an effective date of March 15, 2024, after the filing of this lawsuit.  Moreover, the court observes that the reverse positive pay service is available only to customers who are enrolled in First Citizens' "Commercial Advantage Service" or its "Digital Banking for Business Service."  (Mot. Dismiss Ex. A (TMS Agreement 43), ECF No. 16-1.)  Nothing in the complaint or the parties' briefing indicates that C&C was enrolled in either service.  Under these circumstances, it would be inappropriate for the court to consider the TMS Agreement and the reverse positive pay provision without converting C&C's motion to one for summary judgment.  See Zak, 780 F.3d at 606 ("[C]onversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery.").

   Looking solely at the allegations in the complaint, C&C has stated a plausible claim for relief under Article 4 of the UCC by alleging that First Citizens impermissibly charged its account for two checks that were not properly payable.  First Citizens' contention that C&C's failure to exercise ordinary care substantially contributed to the forgeries, S.C. Code Ann. § 36-3-406(a), implicates questions of fact that cannot be decided on a motion to dismiss.  See Washington v. USAA Fed. Savings Bank, No. 3:19-cv-00767-MGL, 2020 WL 13687607, *4 (D.S.C. July 29, 2020) (unpublished).  Accordingly, the court denies First Citizens' motion to dismiss C&C's first cause of action.

### B. C&C's SCUTPA Claim

   SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  S.C. Code Ann. § 39-5-20(a).  To state a

SCUTPA claim, a plaintiff must allege that "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." Maybank v. BB&T Corp., 787 S.E.2d 498, 512 (S.C. 2016) (internal quotation marks omitted).

In moving to dismiss, First Citizens challenges only C&C's pleading of the first element, arguing that C&C has failed to identify "any actions by [First Citizens] that qualify as unfair or deceptive." (Mem. Supp. Mot. Dismiss 10, ECF No. 16-2). First Citizens' argument, however, assumes that C&C is subject to the TMS Agreement and the reverse positive pay provision. (Id. at 11, ECF No. 16-2) ("Plaintiff's allegations at most reveal a dispute over Plaintiff's compliance with the [TMS] Agreement, and its ability to recover using the protections afforded to customers enrolled in the [reverse positive pay] [s]ervice."). As noted, the court cannot consider the TMS Agreement at this stage of the proceeding. Considering only the allegations contained in the complaint, then, C&C has plausibly alleged that First Citizens committed an unfair or deceptive act when it refused to reimburse C&C for the fraudulent checks drawn on C&C's account. Young v. Century Lincoln-Mercury, Inc., 396 S.E.2d 105, 108 (S.C. Ct. App. 1989), rev'd in part on other grounds, 422 S.E.2d 103 (S.C. 1992) ("A trade practice is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive."). The court thus denies First Citizens' motion to dismiss C&C's second cause of action.

## IV. Conclusion

For the foregoing reasons, First Citizens' motion to dismiss, document number 16, is denied.

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
June 18, 2024